**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEVEN CRAIG PATTY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-3173 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is a property-damage suit arising from a sting operation that went awry.  The plaintiff, Steven Craig Patty, seeks damages arising from the Drug Enforcement Agency's use of his company tractor-trailer without his consent in a controlled drug sale to members of a Mexican drug cartel.  Patty alleges that the DEA agents were negligent, damaging his truck and and killing his driver.  Patty also asserts claims for conversion, abuse of process, and constitutional torts. The United States has moved to dismiss and for summary judgment, arguing that Patty's claims fail as a matter of law.  Patty has moved for partial summary judgment that the United States is liable for damages.

Based on a careful review of the pleadings; the motion, response, and reply; the record; and the applicable law, this court grants the government's motion for summary judgment, denies Patty's motion for partial summary judgment, and enters final judgment by separate order.  The reasons for these rulings are explained in detail below.

**I.     Background**

In July 2011, Steven Craig Patty started "Craig Thomas Expeditors," a small trucking company.  Patty purchased two Kenworth T600 trucks and hired two drivers.  Patty did not know that one of the drivers he hired had been a confidential informant for the Drug Enforcement Agency.

On November 18, 2011, this driver contacted DEA Task Force Officer ("TFO") Villasana, a City of Houston police officer deputized as a DEA agent. The driver told Villasana that he had been asked by someone with the Zeta drug cartel "to transport 1800 lbs. of marijuana from Rio Grande City, Texas to an individual in the Houston area." (Docket Entry No. 53, Ex. A ¶ 4). Patty's driver told Villasana that "he had contract work that would put him in the vicinity of Rio Grande City, Texas," and that "he would tell the owner of the tractor-trailer that he was leasing[] that he had planned to spend Thanksgiving in Houston" and "knew of an inexpensive repair shop in Houston where he could take the truck for routine maintenance and needed repairs." (*Id.*, ¶ 5). The driver did not tell Villasana the name of the truck's owner. (*Id.*). On November 20, 2011, the driver called Villasana again and told him that he had been instructed to pick up and transfer the marijuana the next day. (*Id.*, ¶ 7). Villasana and the driver had no further discussions. (*Id.*).

The DEA Task Force decided to conduct a controlled drug delivery using Patty's driver and truck, targeting several suspected drug smugglers associated with the Zeta cartel. The Task Force "met and devised a surveillance plan" calling for the tractor-trailer to "remain under surveillance at a safe distance by undercover vehicles and aircraft, until the actual delivery of the narcotics took place at a prearranged meeting place" in Houston. "At that point, law enforcement would converge, arrest the suspects[,] and seize the narcotics." (*Id.* ¶ 8).

On November 21, 2011, Patty's driver picked up the load of marijuana in Rio Grande City and began hauling it to the prearranged meeting point in Houston. The plan quickly deteriorated. Several heavily armed cartel members in three sport-utility vehicles intercepted the truck in northwest Houston. The ensuing firefight wounded an undercover Harris County Sheriff's deputy and killed Patty's driver. Patty's truck was "wrecked and riddled with bullet holes." (Docket Entry

No. 34, ¶ 15).  The DEA temporarily impounded his truck but returned it to him in November 2011, still in damaged condition.  (Docket Entry No. 53, Ex. B, at 7).

Patty sought compensation from the DEA for the damage to his truck and company and for police protection against cartel retaliation.  He feared that the cartel might come after him on learning that the truck belonged to his company.  (Docket Entry No. 34, ¶ 17).  The DEA refused Patty's requests.  The government never paid to have Patty's truck repaired.  Nor did Patty's insurance company, which took the position that the damage resulted from "unauthorized" or "illegal" activity.  (*Id.*, ¶ 21).  Patty had to take money out of his 401K retirement fund to repair the truck.  He lost business from his inability to use the truck for 100 days.

On July 23, 2012, Patty filed an administrative claim seeking $1,483,532.10 from the government, $133,532.10 for his economic losses and $1,350,000 for his "pain, suffering, and humiliation."  (Docket Entry No. 1, ¶ 31).  Nearly one year later, on July 8, 2013, the Department of Justice denied Patty's claim.  On October 29, 2013, within the 180-day period limit set by the Federal Tort Claims Act, Patty sued the United States, the head of the DEA Houston Office, six unknown federal agents, Harris County, Texas, and five unknown state and county officers.  (Docket Entry No. 1).  Patty asserted claims under the Federal Tort Claims Act, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, for negligence, intentional torts, and violations of his constitutional rights, and sought $1,483,532.10 in actual damages and $5,000,000 in punitive damages.  (Docket Entry No. 1, ¶¶ 45-46).

In May 2014, Patty voluntarily dismissed his claims against all the defendants except the United States.  In his second amended complaint, Patty asserts four types of tort claims under the Federal Tort Claims Act: (1) "federal common law 'constitutional torts' recognized in *Bivens*"; (2)

3

negligence; (3) conversion; and (4) abuse of process.  (Docket Entry No. 34, ¶ 30).  On February 5, 2015, the government moved to dismiss or for summary judgment, arguing that the constitutional claims are not proper under the FTCA, the FTCA's discretionary function exception bars the negligence and conversion claims, the "intentional tort" exception bars the conversion claim, and that the amended complaint fails to state an abuse-of-process claim.  (Docket Entry No. 53).  Patty moved for partial summary judgment on the government's liability.  (Docket Entry No. 54).  Each party responded and replied.  (Docket Entry Nos. 55, 56, 57).

The parties' arguments are analyzed below.

## II.     The Applicable Law

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).  Rule 12(b)(1) challenges to subject-matter jurisdiction may be facial or factual attacks.  *See, e.g.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); *Russell v. City of Houston*, 808 F. Supp. 2d 969, 972 (S.D. Tex. 2011) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  "A defendant makes a factual attack upon a complaint when a defendant 'submits affidavits, testimony, or other evidentiary materials.'"  *Gloston v. Dep't of Homeland Sec.*, 2014 WL 1660630, at *1 (E.D. La. Apr. 25, 2014) (quoting *Paterson*, 644 F.2d at 523).  "If a court confronts a factual attack, the plaintiff must 'submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject

matter jurisdiction.'" *Id.* (quoting *Paterson*, 644 F.2d at 523).

When a "jurisdictional attack [is] intertwined with the merits of an FTCA claim," however, resolving "the jurisdictional issue on a 12(b)(1) motion [alone] [is] improper." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). Instead, courts "must apply a 12(b)(6) or summary judgment standard to resolve issues dispositive of both subject matter jurisdiction and the merits." *Id.* at 151; *see also id.* at n.3 (observing that a district court may, under certain circumstances, "determine whether [a federal employee] was acting within the course and scope of his [federal] employment on a Rule 56 motion for summary judgment"); *but see Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 407 n.20 (5th Cir. 2014) (limiting *Montez* "to actions under the Federal Tort Claims Act" and "express[ing] doubt about whether a court can ever assume jurisdiction and proceed to the merits" but reserving "for a future case a fuller consideration of the correctness of *Montez*").

### B.    Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (quoting *Twombly*, 550 U.S. at 558).

### C.    Summary Judgment

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on its pleading allegations. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving

7

party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (internal quotation marks and alteration omitted).   Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e)(2).

### D.    The Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*., "'was designed primarily to remove the sovereign immunity of the United States from suits in tort.'" *Levin v. United States*, 133 S. Ct. 1224, 1228 (2013) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)); *see also United States v. Gaubert*, 499 U.S. 315, 318 n.3 (1991).   "The Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment."   *Levin*, 133 S. Ct. at 1228 (citing 28 U.S.C. § 1346(b)(1)).   Under the FTCA, the United States is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  The FTCA is the exclusive remedy for tort claims against the United States or its agencies. Under the FTCA, no action may be brought against the United States unless the claimant first presents the claim to the appropriate federal agency.  28 U.S.C. § 2675(a).  Patty met the FTCA's administrative exhaustion requirement.   He filed his claim with the Department of Justice, which denied it on July 8, 2013.  Patty filed this suit within six months of the denial.  (Docket Entry No. 1, filed October 29, 2013).

The FTCA's waiver of sovereign immunity is subject to "various exceptions." *Gaubert*, 499

8

U.S. at 318 n.4.  The discretionary function exception bars

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

> Another exception, known as the intentional tort exception, bars

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

28 U.S.C. § 2680(h).

These exceptions are affected by a provision covering law enforcement officers.  "In 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers."  *Millbrook v. United States*, 133 S. Ct. 1441, 1443 (2013) (citing Act of Mar. 16, 1974, Pub. L. 93–253, § 2, 88 Stat. 50).  "Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity to claims for six intentional torts"—assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution—if they "are based on the 'acts or omissions of investigative or law enforcement officers.'"  *Id.* (quoting 28 U.S.C. § 2680(h)).  The proviso defines "'investigative or law enforcement officer'" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.* (quoting 28 U.S.C. § 2680(h)).  In *Millbrook v. United States*, the Supreme Court clarified that "the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise

9

within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest."  133 S. Ct. at 1446.

## III.    Analysis

The United States argues that: (1) sovereign immunity bars Patty's constitutional claims; (2) the discretionary function exception bars Patty's FTCA claims for negligence and conversion; (3) the intentional tort exception bars Patty's FTCA conversion claim; and (4) Patty's claims otherwise fail as a matter of law.

### A.    The Constitutional Tort Claims

Patty voluntarily dismissed all defendants but the United States, including the "previously named *Bivens* and § 1983 defendants."  (Docket Entry No. 34 n.1).  But he appears to base his FTCA claims in part on "the federal common law 'constitutional torts' recognized in *Bivens*."  (*Id.*, ¶ 30).  To that extent, Patty's claims fail.  The FTCA does not waive federal sovereign immunity for constitutional torts.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) [i.e., the FTCA] for constitutional tort claims.").

Patty argues that § 2680(h)'s "law enforcement proviso" applies and allows him to sue, including for constitutional torts.  Section 2680(h) allows FTCA claims for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" caused by the "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h); *see also Millbrook*, 133 S. Ct. at 1443.  These listed torts are not constitutional torts.

To the extent that Patty seeks damages from the United States for its officers' constitutional

10

torts, his FTCA claim fails, and is dismissed.  To the extent that Patty seeks damages for the six common-law intentional torts listed in § 2680(h), his claim is addressed below.

**B.      Whether the Discretionary Function Exception Bars Patty's Negligence and Conversion Claims**

The government argues that the official conduct Patty challenges—the DEA's use of his truck and driver in a covert drug delivery operation without his knowledge or consent—is covered by the discretionary function exception and bars his negligence and conversion claims.   The discretionary function "exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'"  *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  "'[I]t is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies."  *Id.* (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)).  "[T]he purpose of the exception is to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  *Id.* (quoting *Varig Airlines*, 467 U.S. at 814).

"Whether the discretionary exception applies involves a two-part inquiry."  *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 713 F.3d 807, 810 (5th Cir. 2013).  Courts first ask whether the challenged conduct involves an element of judgment or choice.  *Id.*  If "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'" then the exception does not apply "because 'the employee has no rightful option but to adhere to the directive.'"  *Gaubert*, 499 U.S. at 322 (quoting *Berkowitz*, 486 U.S. at 536).

"[E]ven 'assuming the challenged conduct involves an element of judgment,'" courts must then consider "'whether that judgment is of the kind that the discretionary function exception was

11

designed to shield.'" *Id.* (quoting *Berkowitz*, 486 U.S. at 536). "[T]he challenged conduct must involve 'governmental actions and decisions based on considerations of public policy.'" *In re FEMA*, 713 F.3d at 810 (quoting *Gaubert*, 499 U.S. at 323). A court "asks 'not whether the decision maker in fact engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis.'" *Id.* (quoting *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 449 (5th Cir. 2012)).

The discretionary function exception protects not only "planning-level decisions establishing programs" and "the promulgation of regulations by which the agencies are to carry out the programs," but also "the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations." *Gaubert*, 499 U.S. at 323. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.*

Both parts of the inquiry are examined below.

### 1.    Whether the challenged conduct involved an element of "judgment or choice"

No statute, regulation, or policy "specifically prescribe[d]" or prohibited the course of action Patty alleges the DEA agents followed. The DEA derives its authority from the Controlled Substances Act, 21 U.S.C. § 801, its implementing regulations, and various executive orders. *See* 21 U.S.C. § 801; Exec. Order No. 11727 (July 6, 1973), 38 Fed. Reg. 18357. But none of these

sources specifically prescribes a course of action for conducting an undercover controlled drug delivery.  In *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006), the Fourth Circuit concluded that an FBI agent's undercover participation in "criminal activity [a Ponzi and money laundering scheme] during [an] undercover investigation involved an element of judgment or choice."  *Id.* at 311.  The agent submitted a declaration stating that "no statute, regulation, or policy directive" required the FBI to carry out its fraud and money laundering investigations by "any particular investigative technique."  *Id.*  The FBI's Undercover Guidelines authorized its agents conducting undercover operations to engage in "'activity that is proscribed by Federal, state, or local law as a felony or that is otherwise a serious crime,' or that presents 'a significant risk of financial loss.'"  *Id.* (alterations omitted).  The agent's declaration emphasized that "undercover operations are necessarily discretionary in nature."

In this case, Task Force Officer Villasana submitted a similar declaration.  He states that the DEA's decision "to proceed with such an operation is entirely discretionary, and not mandated by any statute, rule, or policy."  (Docket Entry No. 53, Ex. E, ¶ 3).  Whether and how to conduct such an undercover investigation and operation is "necessarily discretionary in nature."  *See Suter*, 441 F.3d at 311.  Villasana did not try to give advance notice to Patty that the Task Force would be using his truck because of operation's covert nature, the risks of injury and potential for damage if something went wrong, and the uncertainty about whether other individuals (including Patty) could be trusted.  (*Id.*, ¶¶ 4-5).[1]

Patty argues that DEA policy prohibited Villasana's actions.  *See Gaubert*, 499 U.S. at 324

---

[1]  Patty contends that Villasana's "post-deposition" declaration "is obviously a hearsay document." (Docket Entry No. 55, at 14).  But the declaration states, under penalty of perjury, that Villasana has "personal knowledge of the facts herein stated below."  (Docket Entry No. 53, Ex. E); *see also* 28 U.S.C. § 1746.  Patty does not explain why it is incompetent summary judgment evidence.

("If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.").  He points to Villasana's deposition testimony that "[i]f we're going to use somebody else's vehicle, we have to have permission," and that "if [Villasana] knew who the owner was and the informant would have said to [him], Hey, listen, so-and-so, [the owner] owns this truck and I'm going to do this, [he] would say, Well, we need to get ahold of [the owner]."  (Docket Entry No. 55, Ex. A, at 91–92).

Villasana also testified, however, that "to answer [counsel's] question [about permission] again in the way that [counsel] phrased it, to say that I have to find out who the rightful owner is, whatever, no, sir."  (*Id.* at 92). Villasana also testified that he was not "aware of" any policy or procedure telling him to "clarify or seek permission from lawful, rightful owners before using their property for DEA authorized operations."  (*Id.*).  Villasana testified that "contact[ing] the lienholder to get permission or the holder or the title owner" was "never a necessary step" and "was not something that we normally do."  (*Id.* at 91).  Patty acknowledges as an undisputed material fact that "Officer Villasana was aware of no 'formal procedure or policy from the DEA regarding determining the identity of the owner of the truck."  (Docket Entry No. 55, Undisputed Material Facts, ¶ 13 (quoting Ex. A, at 91-92)).

The record evidence is clear that no formal policy, regulation, or statute required Villasana and the other Task Force members to secure Patty's consent before using his vehicle for the covert controlled drug delivery.  The conduct Patty challenges was "a 'matter of choice for the acting employee[s].'"  *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010) (quoting *Berkovitz*, 486 U.S. at 536); *see also Suter*, 441 F.3d at 311 (concluding that it was "clear that the conduct alleged by Appellants falls within the scope of the discretionary authority conferred on the FBI by the

14

Undercover Guidelines" because they permitted "FBI officials to authorize, and agents to engage in, a wide range of activities in connection with undercover investigations—including [a]ctivity that is proscribed by Federal, state, or local law as a felony or that is otherwise a serious crime," or that presents "a significant risk of financial loss."); *see also Frigard v. United States*, 862 F.2d 201 (9th Cir. 1988) (per curiam) (concluding that "the CIA's alleged use of [a fraudulent investment company] in its covert operations" required the court "to apply the discretionary function exception" because "the CIA is charged by Congress with collecting intelligence, and because this charge involves elements of judgment and choice and strong public policy considerations, the decision as to how best to fulfill this duty is within its discretion"); *see also Crenshaw v. United States*, 959 F. Supp. 399, 402 (S.D. Tex. 1997) (holding that actions taken by FBI agents trying to entrap the plaintiff "involved an element of judgment or choice" because "[t]here is no federal statute or regulation that scripts the interactions between law enforcement agents and suspect during undercover operations" and "[t]he agents involved in this case utilized their own judgment at every stage of the sting operation.").

Before carrying out the undercover controlled drug transaction, the DEA Task Force met and discussed "the need to keep the operation covert and not involving unknown persons [such as the truck's owner] and their associations that could jeopardize the success of the mission." (Docket Entry No. 53, Ex. E ¶ 5). This decision was a choice that required judgment. Patty has not "pointed to any nondiscretionary [statutory, regulatory, or policy-based] duties that were violated by the [DEA agents'] exercise of this discretion." *See Spotts*, 613 F.3d at 572.

Patty argues that the challenged conduct is not "consistent with the policy and goals of the DEA" because "the Fourth and Fifth Amendments specifically prohibit this sort of behavior."

15

(Docket Entry No. 55, at 15).  He cites no cases to support this argument and has "waived the issue by failing to brief it adequately."  *See Huff v. Neal*, 555 F. App'x 289, 298 (5th Cir. 2014) (rejecting a similar argument "that the defendants did not possess the discretion to violate his Eighth Amendment right against cruel and unusual punishment" because the appellant "provide[d] little analysis of this argument and [did] not cite any case besides the overturned [panel] opinion in *Castro*").[2]

Even if Patty had adequately developed this argument, it fails on the pleadings, the summary judgment record, and the applicable law.  In *Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987), the Fifth Circuit "hypothesize[d]," in dicta, about "the classic *Bivens*-style tort, in which a federal law enforcement officer uses excessive force, contrary to the Constitution or agency guidelines,

---

[2] In *Castro v. United States*, 2007 WL 471095 (S.D. Tex. 2007), the plaintiff sued the United States under the FTCA for negligence, intentional torts, and constitutional torts based on the Border Patrol's decision to let her minor daughter accompany her father to Mexico without consulting the plaintiff.  The district court dismissed the plaintiffs' tort claims as barred by the discretionary function exception.  *See id.* at *8-9.  The court dismissed the constitutional claims for damages because of sovereign immunity and for injunctive relief because her daughter's return made the claim moot.  *See id.* at *9.

On appeal, a divided Fifth Circuit panel reversed.  The panel concluded that the district court erred "by not first considering [before applying the discretionary function exception] whether the Border Patrol Agents exceeded the scope of their authority" by violating the Constitution.  *See Castro v. United States*, 560 F.3d 381, 389 (5th Cir. 2009) (citing *Sutton*, 819 F.2d at 1293 ("[W]e have not hesitated to conclude that such action does not fall within the discretionary function exception of § 2680(a) when governmental agents exceed the scope of their authority as designated by statute or the Constitution.")).

Judge Smith dissented.  He argued that "[u]nder the majority's framework, by a plaintiff's artful pleading, the United States can be liable whenever the Constitution is violated even though, under *[F.D.I.C. v.] Meyer*[, 510 U.S. 471 (1994)], the sovereign is not subject to liability for constitutional torts."  *Castro*, 560 F.3d at 394 (Smith, J., dissenting).  Judge Smith also criticized the majority's opinion for "turn[ing] *Bivens* on its head" because "the United States may be liable for conduct even where its officers cannot be" if the violation was not "clearly established."  *Id.* at 394.

The en banc court vacated the panel opinion and affirmed the district court.  *See Castro v. United States*, 608 F.3d 266 (5th Cir. 2010) (per curiam).  The en banc majority did not expressly address either the panel opinion's reasoning or Judge Smith's dissent.  Instead, it concluded "that the discretionary function exception applie[d]" for "essentially the reasons given by the district court."  *Id.* at 268.  After the en banc court's decision, *Castro* does not support Patty.  If anything, it supports the government.

16

which simply does not involve the exercise of discretion as that term has been applied under §
2680(a)." *Id.* at 1293; *see also id.* (observing that "we have not hesitated to conclude that such
action does not fall within the discretionary function of § 2680(a) when governmental agents exceed
the scope of their authority as designated by statute or the Constitution," but only providing a
"violation of agency regulations" as an example). "Nothing in *Sutton*, however, turned on whether
a constitutional right was violated; the defendants did not plead any such violation." *Castro*, 560
F.3d at 393 (Smith, J., dissenting), *vacated on reh'g en banc*, 608 F.3d 266 (2010). To the extent
that *Sutton* can be read to allow bypassing the discretionary function exception by alleging a
constitutional tort that overlaps with a state-law tort, it is "irreconcilably inconsistent with Supreme
Court precedent." *Id.* at 393 (Smith, J., dissenting). *Gaubert*, for example, held that the
discretionary function exception bars federal jurisdiction unless "a federal statute, regulation, or
policy specifically prescribe[d] a [federal officer's] course of action." 499 U.S. at 322-23. The
Constitution is conspicuously absent from this list. And *FDIC v. Meyer*, 510 U.S. 471 (1994), which
stated that "the United States simply has not rendered itself liable under § 1346(b) [of the FTCA]
for constitutional tort claims," would effectively be void under *Sutton*'s reasoning. *Id.* at 478.
*Meyer* stated that the Supreme Court had "implied a cause of action against federal officials in
*Bivens* in part because a direct action against the Government was not available." *Id.* at 485. It
would be anomalous to treat FTCA claims against the United States "more liberally than [courts]
treat *Bivens* actions against individual federal officers," which require a violation to be "clearly
established." *See Castro*, 560 F.3d at 393 (Smith, J., dissenting).

In any event, Patty fails to explain how these constitutional provisions specifically prescribed
a different course of conduct or specifically proscribed what the officers did. The record shows that

the DEA task force members did not know Patty's name, were under the impression that his driver was the vehicle's rightful lessee, and third parties caused the vehicle damage.  To borrow a phrase from qualified immunity law, Patty has not shown that the "clearly established law" in place when the undercover operation was planned and implemented made the officers' conduct unconstitutional.

*Gaubert*'s first prong is satisfied.

### 2.   Whether the challenged conduct involved governmental actions and decisions that included public policy considerations

The next issue is whether the challenged conduct—using Patty's truck without his consent in a covert controlled drug delivery as part of an undercover drug smuggling investigation—was susceptible to public-policy analysis.  The DEA's mission is to enforce the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, its implementing regulations, and other narcotics laws.  The responsibilities involved in carrying out this mission include investigating and preparing to prosecute those who violate the controlled substance laws at both national and international levels; seizing and obtaining the forfeiture of assets derived from, or intended for use in, drug trafficking; enforcing the Act's provisions and regulations governing the manufacture, importation, distribution, and dispensing of legally produced controlled substances; managing the national drug intelligence program, in cooperation with federal, state, local, and foreign officials; and coordinating and cooperating with other law-enforcement entities in operations—including controlled drug deliveries—designed to reduce the availability of illicit drugs in the United States.  (Docket Entry No. 53, Ex. F).  Orchestrating a covert controlled drug delivery using a vehicle and driver unconnected to any law enforcement organization to obtain evidence against a suspected drug cartel smuggling operation to prosecute those responsible fits within and furthers these policy goals.  (Docket Entry

No. 53, Ex. E, ¶¶ 4-6).  Deciding to carry out the operation without giving the vehicle owner advance notice and obtaining his consent is consistent with maintaining the covert nature of the operation and therefore with the policy goals.

Patty argues that Villasana's testimony shows that he did not make a conscious decision whether to get Patty's permission to use the truck, and therefore did not consider public-policy interests.  But "the proper inquiry under prong two is not whether [the government actor] in fact engaged in a policy analysis when reaching his decision but instead whether his decision was 'susceptible to policy analysis.'"  *Spotts v. United States*, 613 F.3d 559, 572 (5th Cir. 2010) (quoting *Gaubert*, 499 U.S. at 325).  Courts have consistently held that covert law-enforcement operations like the one at issue here are susceptible to policy analysis and covered by the discretionary function exception.

In *Suter*, for example, the "victims of a large-scale Ponzi and money laundering scheme" sued the United States under the FTCA, alleging that the FBI, in connection with its [undercover] investigation of the fraudulent scheme, participated in the very frauds which it was investigating." 441 F.3d at 309.  The plaintiffs alleged that one agent, "with the full knowledge of the FBI," "assisted in the formation and operation of business entities used in furtherance of the scheme," which "drastically extended the scope of the injury inflicted and the number of victims injured." *Id.*  The district court concluded that the discretionary function exception barred the claims, and the Fourth Circuit affirmed.  The panel concluded that the challenged conduct involved elements of the agent's judgment or choice and was susceptible to public-policy analysis.  "The FBI's decision whether, as part of its investigation, to participate in criminal activity likely to result in financial loss to third parties is one which we would expect inherently to be grounded in considerations of policy."

*Id.* at 311 (quotations omitted).  The Fourth Circuit "agree[d] with the core principle articulated by the Eighth and Ninth Circuits—that discretionary, policy-based decisions concerning undercover operations are protected from civil liability by the discretionary function exception, even when those decisions result in harm to innocent third parties"—because "[i]mposing liability for such decisions 'would seriously handicap' the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress."  *Id.* at 312 (citing *Ga. Cas. & Sur. Co. v. United States*, 823 F.2d 260, 263 (8th Cir. 1987); *Frigard v. United States*, 862 F.2d 201, 203 (9th Cir. 1988) (per curiam)).

*Georgia Casualty v. United States*, 823 F.2d 260 (8th Cir. 1987) involved an insurer's FTCA claim against the United States after paying claims from victims of an FBI undercover automobile-theft ring.  The victims had purchased vehicles believing them to be legally sold.  Georgia Casualty alleged that the government negligently failed to notify it in advance of its covert action or identify and seize the proceeds the auto thieves received, causing the harm to innocent third parties that led to the insurance claims.  The Eighth Circuit affirmed the district court's grant of summary judgment for the United States based on the discretionary function exception.  The appellate court held that the undercover operation was a "permissible means of investigation" and that the "FBI's decision to maintain secrecy [] involved the balancing of policy considerations."  *Id.* at 263.  The court noted that the policy against notifying innocent third parties of impending harm had been subject to congressional scrutiny, and that a legislative subcommittee had made several recommendations about compensating innocent victims who did not receive any advance warning of impending harm. *Id.*

In *Frigard v. United States*, 862 F.2d 201 (9th Cir. 1988) (per curiam), the victims of a CIA

undercover operation alleged that the CIA's misrepresentations about a company led them to invest. The victims sued under the FTCA when they lost their investment, alleging that the CIA had used the company "as a cover for its operations," "wrongfully permitted . . . the firm['s] president [] to defraud investors," and "misrepresented that [the investment company] was a legitimate company." *Id.* The Ninth Circuit emphasized that "the CIA is charged by Congress with collecting intelligence, and because this involves elements of judgment and choice and strong policy considerations, the decision as to how best to fulfill this duty is with in its discretion." *Id.* at 203. Citing *Georgia Casualty* with approval, the Ninth Circuit concluded that "the alleged decisions by the CIA to use [the investment company] and to keep its use of the company secret [were] administrative decisions grounded in social and economic policy" that were "within the discretion of the CIA and protected" by the discretionary function exception. *Id.*

District courts in this circuit and others have reached similar conclusions.  In *Padilla v. United States*, 2007 WL 2409792 (W.D. Tex. Aug. 20, 2007), for example, the district court applied the discretionary function exception to the plaintiffs' claims that a DEA confidential informant murdered their relatives "while on the United States' payroll." *Id.* at *3.  The court held that the DEA agents' "[d]ecisions to investigate, judgment calls regarding the use of an informant, and whether to terminate a confidential informant's work form the core of law enforcement activity" and were "exactly the type of policy-based decision the discretionary function was designed to safeguard." *Id.* at *10-11.  Similarly, in *Crenshaw v. United States*, the district court applied the discretionary function exception to a plaintiff's negligent investigation claims against FBI agents who tried to entrap him.  *See* 959 F. Supp. at 403.  The court noted that the agents' "decisions to take or refrain from certain actions were controlled by their desire to obtain . . . evidence," which

"correlates with the public policy goal of punishing and deterring those who violate federal laws." *Id.*; *see also Woods v. United States*, 2007 WL 3243852, at *1 (D.N.J. Nov. 1, 2007) ("The design, implementation, operation and supervision of an undercover operation and the selection, training and supervision of a Special Agent or informant are classic discretionary functions for which the Federal Tort Claims Act has not waived sovereign immunity.").

Patty argues that these cases are distinguishable because "[n]one involve[s] harm to a completely innocent citizen who was totally uninvolved in the crimes the government was investigating, and none involve[s] federal 'public policy' made unwittingly by a corporal level officer in a municipal police department under the guidance and authority of a controlling Federal agency." (Docket Entry No. 55, at 15 n.3).  This argument is unpersuasive.  All three circuit cases involved innocent victims, and both *Georgia Casualty* and *Frigard* involved "innocent third parties."  *See Georgia Cas.*, 823 F.2d at 263; *Suter*, 441 F.3d at 312 ("agree[ing] with the core principle articulated by the Eighth and Ninth Circuits—that discretionary, policy-based decisions concerning undercover operations are protected from civil liability by the discretionary function exception, even when those decisions result in harm to innocent third parties").  And while Villasana was a Houston police officer, he was a deputized DEA agent assigned to its High-Intensity Drug Enforcement Task Force since 2008.  (Docket Entry No. 53, Ex. E, ¶ 1).[3]

The undisputed summary judgment evidence and the clear law show that the discretionary function exception bars Patty's negligence and conversion claims.  *See Castro v. United States*, 608 F.3d 266, 267-68 (5th Cir. 2010) (en banc) (per curiam) (affirming the district court's dismissal of

---

[3] Patty also argues that a "'controlled delivery' operation" is distinguishable from "an 'undercover sting' operation."  (Docket Entry No. 55, at 7).  But that is a distinction without a difference.

the plaintiffs' FTCA claims for negligence and intentional infliction of emotional distress under the discretionary function exception); *Suter*, 441 F.3d at 310 (affirming the district court's dismissal of the plaintiffs' negligence and fraudulent misrepresentation claims on the alternative basis that both fell within the discretionary function exception); *Thames Shipyard and Repair Co. v. United States*, 350 F.3d 247, 253 n.4 (1st Cir. 2003) (holding that the court's conclusion that the Coast Guard's "evacuation decision [was] protected by the discretionary function exception dispose[d] of most of" the plaintiff's other claims, including "conversion"); *Love v. United States*, 915 F.2d 1242, 1246 n.2 (9th Cir. 1989) (entertaining the government's argument that the discretionary function exception provided an alternate ground for affirming the district court's dismissal of the plaintiffs' conversion claim but declining to do so because the government failed to comply with other FTCA requirements).[4]

The government's motion for summary judgment dismissing the negligence and conversion claims is granted; Patty's cross motion as to these claims is denied.

### C.    Whether the Law Enforcement Proviso provides a basis for Patty's claims

Patty argues that the discretionary function exception does not apply to bar the intentional torts enumerated in § 2680(h)'s law enforcement proviso.  *See Sutton v. United States*, 819 F.2d 1289, 1297 (5th Cir. 1987) (concluding that "if the law enforcement proviso is to be more than an

---

[4]  *Simons v. United States*, 413 F.2d 531 (5th Cir. 1969), which held that the discretionary function exception did not bar a plaintiff's claim for trespass under the FTCA because "the Government has no authority or discretion over land not under its control," *id.* at 534, does not require a different result.  That case has never been cited by a subsequent Fifth Circuit panel.  It was "decided before *Gaubert*[, 499 U.S. 315 (1991)]," which broadened the discretionary function exception's scope.  *See Callahan v. United States*, 329 F. Supp. 2d 404, 410 (S.D.N.Y. 2004); *see also Huff v. Neal*, 555 F. App'x 289, 298 n.9 (5th Cir. 2014) (observing that "[r]egardless of whether Huff purports to rely on a negligence theory or intentional-tort theory, the conduct underlying [the plaintiff's] FTCA claims falls within the discretionary function exception" because "[t]he exception does not depend on the [plaintiff's] theory" (citing *Gaubert*, 499 U.S. at 322)).

illusory—now you see it, now you don't—remedy, the discretionary function exception cannot be an absolute bar which one must clear to proceed under § 2680(h)"); *Nguyen v. United States*, 556 F.3d 1244, 1257 (11th Cir. 2009) ("To hold in this case that the discretionary function exception in subsection (a) trumps the specific proviso in subsection (h) would defeat what we know to be the clear purpose of the 1974 amendment." (citing *Sutton*, 819 F.2d at 1297)).  The precise effect of the Fifth Circuit's recent en banc decision in *Castro v. United States*, 608 F.3d 266 (5th Cir. 2010) (en banc) (per curiam) on *Sutton* is unclear.  In *Castro*, the plaintiff sued the United States under the FTCA, alleging that the Border Patrol agents' actions in detaining her minor daughter and allowing her to accompany her father to Mexico without the plaintiff's consent were negligent.  She also alleged that their actions amounted to assault, abuse of process, false imprisonment, and intentional infliction of emotional distress.  *See* 2007 WL 471095, at *3-4 (S.D. Tex. Feb. 9, 2007).  The district court dismissed the plaintiffs' FTCA claims, including for intentional torts, under the discretionary function exception.  *Id.* at *9.  The Fifth Circuit panel reversed, concluding that the defendants could be liable for acting outside the scope of their discretionary authority if their actions violated the Constitution. *See Castro*, 560 F.3d 381.  The en banc court vacated the panel decision and affirmed the district court's dismissal "of the FTCA claims," including the assault, abuse of process, and false imprisonment claims covered by the law enforcement proviso, "for want of jurisdiction," citing the reasons given by the district court.  *Castro*, 608 F.3d at 268.  The en banc court did not expressly address the interaction of the discretionary function exception and the law enforcement proviso.  *See Camacho v. Cannella*, 2012 WL 3719749, at *7 (W.D. Tex. Aug. 27, 2012) (refusing to hold "that the discretionary function exception always trumps the law enforcement proviso," noting that "*Sutton* remains the binding law in the Fifth Circuit" because *Castro* did not overrule it.).

Assuming that *Sutton*'s holding on the law enforcement proviso remains binding law after *Castro*, Patty still fails to state a claim for any of the six intentional torts for which § 2680(h) waives sovereign immunity if a law enforcement officer commits them. The torts are "assault, battery, false imprisonment, false arrest, abuse of process, [and] malicious prosecution." 28 U.S.C. § 2680(h). Patty asserted only an abuse-of-process claim in his second amended complaint. (Docket Entry No. 34, ¶ 30).

The FTCA waives liability "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In Texas, the elements of a claim for abuse of process are: "(1) that the defendant made an illegal, improper, perverted use of the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity." *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 469 (W.D. Tex. 1999) (quoting *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1994, no writ)). "Such a claim requires that the process be used 'to accomplish an end which is beyond the purview of the process, and which compels a party to do a collateral thing which he would not be compelled to do.'" *Id.* (quoting *Detenbeck*, 886 S.W.2d at 480). "If the process is used for the purpose for which it was intended, "even though accompanied by an ulterior motive, no abuse of process occurs." *Id.*; *see also In Re Burzynski*, 989 F.2d 733, 739 (5th Cir. 1993). "Without a showing that the use of the process itself was illegal, a claim for abuse of process must be dismissed." *In Re Burzynski*, 989 F.2d at 739.

Patty has neither pleaded nor pointed to record evidence supporting a claim for abuse of process. He has not alleged, much less shown, that the DEA or its agents used any "process," or that they had "an ulterior motive or purpose." The summary judgment record undermines Patty's claim

25

for abuse of process.  The government is entitled to judgment as a matter of law on this claim.

**IV.     Conclusion**

The court denies Patty's motion for partial summary judgment, (Docket Entry No. 54), and grants the government's motion for summary judgment dismissing this case, (Docket Entry No. 53). Final judgment is entered by separate order.

SIGNED on April 27, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

26